IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD M. WILLMES,

        Civil No. 08-1439-ST

      Petitioner,

   v.

J.E. THOMAS, Warden,

        OPINION AND ORDER

      Respondent.

      Gerald M. Needham
      Assistant Federal Public Defender
      101 S.W. Main Street, Suite 1700
      Portland, Oregon 97204

          Attorney for Petitioner

      Karin J. Immergut
      United States Attorney
      Suzanne A. Bratis
      Assistant U.S. Attorney
      1000 SW Third Avenue, Suite 600
      Portland, Oregon 97204-2902

          Attorneys for Respondent

///

1 - OPINION AND ORDER

STEWART, Magistrate Judge.

Petitioner brings this federal habeas corpus action pursuant to 28 U.S.C. § 2241 in which he alleges that his right to due process of law was violated during a prison disciplinary hearing at FCI-Sheridan. Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons which follow, the Petition for Writ of Habeas Corpus (docket #1) is granted.

<u>BACKGROUND</u>

Petitioner is currently incarcerated at FCI-Sheridan as a result of his 1990 conviction in the District of Nebraska on one count of Conspiracy to Manufacture, Distribute and Possess Methamphetamine. Respondent's Exhibit 2, p. 1. On October 29, 2006, petitioner and his cellmate, Richard Forrest, were given a urinalysis test by Bureau of Prisons ("BOP") Officer Van Dusen to determine if either inmate had ingested narcotics. Forrest had been taking OxyContin to alleviate his pain from severe burns he suffered in a fire in the prison kitchen. At the time of the drug test, Forrest informed Van Dusen that his sample would test positive due to his use of OxyContin, an opiate-based painkiller which he had taken twice that day at 6:30 a.m. and 8:00 p.m. at the pill dispensary in accordance with his physician's prescription. Respondent's Exhibit 1, Att. 2, pp. 6-7, ¶¶ 4, 6.

2 - OPINION AND ORDER

Surprisingly, Forrest passed the urinalysis test while petitioner failed, leading petitioner to believe that his sample had been improperly recorded as Forrest's. To support his theory, petitioner sought to call Officer Van Dusen at his disciplinary hearing, but was thwarted when the Disciplinary Hearings Officer ("DHO"), without explanation, scheduled the hearing for a day on which he knew Officer Van Dusen was not scheduled to work. At the conclusion of the hearing, the DHO found petitioner guilty of using narcotics and ordered that he forfeit 40 days of good conduct time, spend 30 days in disciplinary segregation, lose social visiting privileges for one year, and lose his telephone privilege for one year. Respondent's Exhibit 1, Att. 4, p. 3.

Following his administrative appeals of this decision, petitioner filed a 28 U.S.C. § 2241 habeas action alleging that Officer Van Dusen's absence from his disciplinary hearing violated petitioner's right to due process of law. The court agreed, and granted relief on the Petition. The court required respondent to restore petitioner's good time credits and lost privileges immediately, or hold a new hearing which complied with petitioner's right to due process of law.

The BOP held a new disciplinary hearing on February 20, 2008, when petitioner was represented by a staff representative. It is the task of the staff representative "to assist the inmate if the inmate desires by speaking to witnesses and by presenting favorable

3 - OPINION AND ORDER

evidence to the DHO on the merits of the charge(s) or in extenuation or mitigation of the charge(s)." Program Statement 5270.07, Ch. 7 at 2. Petitioner again requested that Officer Van Dusen appear as a witness. He also submitted the Affidavit of Jim Strupp, an Investigator with the Federal Public Defender's Office. Respondent's Exhibit 1, Att. 2, pp. 6-12. Strupp's Affidavit detailed Forrest's continuous use of OxyContin for more than two months to treat his severe burns from the prison kitchen fire, a course of treatment which should have yielded a positive result for opiates. *Id* at 7-8, ¶¶ 4-9. According to Strupp's Affidavit, Forrest also took OxyContin twice on the day of the urinalysis test in a highly controlled environment in the medical unit. *Id* at 7-8, ¶¶ 4,6.

An inmate is prohibited from questioning any witness at a prison disciplinary hearing, and all questioning must be conducted by either the inmate's staff representative or by the DHO when an inmate has waived staff representation. 28 C.F.R. 541.17(c). As a result, petitioner prepared, in advance of the hearing, the following questions for his staff representative to ask Officer Van Dusen:

> 1.  Did officer Van Dusen, at any time, lose direct observation with the urine specimens when he escorted Forrest and I from the visiting room to the metal shack? Under P.S. 6060.08, Officer Van Dusen can never lose direct control of the samples until they are secured in a locked safe.

4 - OPINION AND ORDER

2.    What was his procedures [*sic*] after he collected the samples from the start to the end when the Coordinator took custody?

3.    Who was the Coordinator and [what were] the log times that the chain of custody changed hands from Van Dusen to the Coordinator?

4.    The record clearly shows Officer Van Dusen left the samples unattended in the visiting room when he escorted Forrest and I back to the metal shack and the Chin of Custody was broken.

Respondent's Exhibit 1, Att. 5, p. 13.

At the disciplinary hearing, petitioner's staff representative presented Officer Van Dusen with petitioner's list of questions. *Id* at 2. Officer Van Dusen answered those questions in the following statement:[1]

I was ordered by the Operations Lieutenant to take the two inmates to the Visiting Room and give them a urinalysis test. We went in, I already had the bottles present. I had the cameras pre-set. I asked the Control Room Officers to keep an eye on the monitors. I took one inmate in, he provided a sample and I walked him out. I had him sign the tag to go on the bottle and forms. Per policy, I had them watch as I placed the label on the bottle and the bottle in the bag and the bag was sealed. At no time was more than one sample out at a time. The first sample was completely sealed before the next was started. That precludes cross contamination. The second inmate was done in the same manner. Everything was done in accordance to policy. I placed them on the counter where they could

_____

[1]   It is unclear from the record if this statement is taken verbatim from a tape recording of the hearing (which petitioner requested but has not been produced), is a written statement by Officer Van Dusen, or is a paraphrased recollection of the DHO.

5 - OPINION AND ORDER

> be watched by the camera, then I took the two
> back to the unit. The Visiting Room was
> sealed up. When I got back, I got both bags,
> placed them under lock and key in the
> refrigerator in the Control Sallyport. The
> bags were not tampered with. I checked them
> before I put them in the refrigerator by order
> of the Operations Lieutenant and locked up the
> refrigerator. From then on it was dealt with
> by SIS. There was no other staff or inmates
> in the Visiting Room when I left and I secured
> the room when I left. The forms were in
> succession. Each inmate watched me put the
> seal on the bottle.

*Id* at 2.

At the end of the hearing, the DHO concluded that the samples were properly collected and tested, yielding a positive result with respect to petitioner's sample. He therefore found petitioner guilty of using narcotics. *Id* at 4.

Petitioner appealed this decision using the administrative remedy process, asserting, in part, that the DHO refused to admit his supporting evidence in the form of the Strupp Affidavit, while at the same time faulting him for not providing any evidence in support of his claims. Respondent's Exhibit 1, Att. 2, p. 5. The DHO's report did not indicate that he considered the Strupp Affidavit in his documentary evidence. Respondent's Exhibit 1, Att. 5, p. 2. The Regional Director granted relief and remanded the case to the DHO for reconsideration. Respondent's Exhibit 1, Att. 2. p. 3.

Upon reconsideration, the DHO did not hold a new hearing and instead conducted a review of the existing record, expanding his

review to include the Strupp Affidavit. Respondent's Exhibit 1, Att. 6, pp. 1-2. The DHO then made his final decision that petitioner was guilty of the charged offense. In doing so, he noted:

> While the DHO cannot account for the sample of inmate Forrest returning a negative response, the evidence presented in regards to the sample of inmate Willmes (the chain of custody form signed by inmate Willmes indicating the sample was provided by him and sealed in his presence, the statements of Officer Van Dusen which indicates he collected the samples from inmates Willmes and Forrest separately and one was collected, the paperwork completed and the sample sealed before the next sample was collected, the statement of inmate Forrest in the affidavit of J. Strupp which indicates he observed inmate Willmes and Officer Van Dusen at the counter where he assumes the paperwork was being completed and he is sure Officer Van Dusen put the stickers on his bottle before they left the visiting room) indicates inmate Willmes committed the prohibited act of Use of Narcotics.

*Id* at 5.

Petitioner again sought administrative review, challenging the DHO's decision not to hold a new hearing. Respondent's Exhibit 1, Att. 2, p. 17. The Regional Director denied petitioner's appeal, specifically noting that its prior decision granting relief did not order a rehearing, but only required the DHO to reconsider the matter. *Id* at 15-16. The BOP's Administrator of National Inmate Appeals also denied appellate relief. *Id* at 18. The parties agree that petitioner has exhausted his administrative remedies.

Petitioner filed this federal habeas corpus case on December 11, 2008 challenging his disciplinary conviction on due process grounds. Specifically, petitioner makes the following allegations:

1.    Officer Van Dusen did not answer the list of questions presented to him by petitioner's staff representative;

2.    Officer Van Dusen admitted in the rehearing that he did, in fact, break the chain of custody when he had the control room officers monitor the urine specimens by camera; and

3.    When petitioner's administrative appeal was granted, the DHO was obligated to hold a new hearing, not simply conduct a paper review.

Petition for Writ of Habeas Corpus (docket #1), pp. 3-4.

## DISCUSSION

Due process in prison disciplinary hearings requires prison officials to: (1) provide advance written notice of the disciplinary violation; (2) allow the charged inmate an opportunity to call witnesses and present documentary evidence in his defense when allowing him to do so "will not be unduly hazardous to institutional safety or correctional goals"; and (3) provide a written statement by a factfinder as to the evidence relied upon and the reasons for disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

In this case, petitioner alleges that Officer Van Dusen did not adequately answer the questions presented to him by petitioner's staff representative, and further elaborates in his

8 - OPINION AND ORDER

brief that he should have had the opportunity to ask follow-up questions for clarification. Petitioner argues that the constitutional right to call a witness must include the right to question that witness.

It is well-established that where prison officials do not allow witnesses to testify at a hearing, they must justify such a decision on a case-by-case basis. *Ponte v. Real*, 471 U.S. 491, 497 (1985). "[T]o hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing and then conclude that no explanation need ever be vouched for the denial of that right . . . would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board." *Id* at 498. Petitioner attempts to extend this line of reasoning to the BOP's limitation on a prisoner's ability to question witnesses at a disciplinary hearing, arguing that the BOP's blanket prohibition against direct questioning by a prisoner violates due process because such a decision is not made on a case-by-case basis.

Petitioner's questions to Officer Van Dusen generally asked him to recount the events of the night when the urine samples were collected. Van Dusen complied with this request and answered petitioner's questions fully. Petitioner fails to cite, and this court is unable to locate, any authority for the proposition that a due process violation results where a witness adequately responds

9 - OPINION AND ORDER

to an inmate's prepared questions, but the inmate is not allowed to ask additional follow-up questions. In fact, the Supreme Court has concluded that due process does not require a prison to allow an inmate to confront and cross-examine witnesses. *Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976); *Wolff*, 418 U.S. at 569. It follows that an inmate's due process right to call a witness does not involve an unlimited ability to question that witness and may be properly limited to questions prepared in advance. Thus, the court concludes that *Wolff* requires only that an inmate have an opportunity to call and question a witness. The method in which a prisoner may question a witness at a disciplinary hearing is left "to the sound discretion of the officials of [the] prisons." *Wolff*, 418 U.S. at 569.

Petitioner also asserts that the paper review conducted by the DHO following the administrative remand lacked any of the procedural safeguards required by *Wolff*. Wolff's procedural safeguards were met when petitioner was afforded notice of the charges and an opportunity to call witnesses and present documentary evidence and when the DHO issued a written decision. The remand to reconsider the case in light of the information in the Strupp Affidavit enforced petitioner's right to present documentary evidence, and did not necessitate an entirely new hearing. Petitioner had already offered the Strupp Affidavit. The DHO simply needed to admit and consider it along with all of the

other evidence previously adduced at the hearing. *Wolff* does not require an entirely new hearing under such a circumstance.

Petitioner next asserts that Officer Van Dusen admitted during the hearing that he did, in fact, break the chain of custody of the evidence when he asked the officers in a prison control room to monitor the specimens by camera. This due process claim is a substantive one, as petitioner challenges the finding of guilt where the chain of custody was not strictly maintained and the result of the urinalysis makes no sense. In *Superintendent v. Hill*, 472 U.S. 445 (1985), the Supreme Court held that due process during a prison disciplinary hearing requires that "some evidence" exist to support the findings made during such a hearing. *Id* at 455. In order for a litigant to prevail on such a claim, he must show that the record in his case is "so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Id* at 457.

In this case, there is no doubt that the DHO had "some evidence" to find petitioner guilty of the charged offense: (1) the toxicology laboratory results showed that petitioner's urine sample tested positive for Opiates-Morphine; (2) the chain of custody form signed by petitioner, certifying that the sample which ultimately tested positive was his own, that he provided the sample to officer Van Dusen, and that the specimen was sealed in his presence; (3) Officer Van Dusen's statement that he took the samples from

petitioner and Forrest separately and properly recorded petitioner's sample; (4) Forrest's statement to Strupp that, before he gave his urine sample, he observed Officer Van Dusen and petitioner at the counter of the visiting room where he assumed they were filling out the paperwork identifying the sample petitioner had just provided; and (5) a statement from the staff pharmacist that he had not provided petitioner with any medication which could lead to a positive urinalysis result. Respondent's Exhibit 1, Att. 6, p. 5. This evidence, though, does not tell the entire story.

Petitioner's case is highlighted by inconsistencies and troubling practices. It all began with the drug test itself, which was performed at an unusually late time. Petitioner and Forrest were brought to the visiting area for testing at 10:00 p.m., a situation which Forrest described as "abnormal." Respondent's Exhibit 1, Att. 2, p. 9, ¶ 11. When Forrest asked Officer Van Dusen why he and petitioner were being directed to undergo a urinalysis, Officer Van Dusen simply replied "suspicion." *Id* at 11, ¶ 17. Despite these facts, the DHO submitted a Declaration stating that "[p]etitioner was given a urinalysis as part of routine and random drug testing." Respondent's Exhibit 1, ¶ 9. This characterization is contrary to the evidence in the record.

When petitioner proceeded to his original disciplinary hearing on December 7, 2006, the DHO ascertained Officer Van Dusen's work

schedule to determine his availability as a witness.  For reasons
which have never been made clear, the DHO elected to schedule
petitioner's hearing for a day when Officer Van Dusen was clearly
not slated to work, thereby rendering petitioner's only requested
witness unavailable for the hearing.

There is also no explanation in the record underlying the
DHO's decision to refuse to admit the Strupp Affidavit into
evidence during petitioner's second disciplinary hearing.  Indeed,
it is curious that the DHO refused to admit the Affidavit and then
later faulted petitioner for not providing any evidence in support
of his claims.  This is a source of concern because the Strupp
Affidavit contained highly relevant, exculpatory information.

It is also troubling that the DHO only admitted the Strupp
Affidavit when required to do so following an administrative remand
and, even then, only noted that he could not explain its contents,
a fact which did not prevent him from finding petitioner guilty yet
again.  Not only could the DHO not explain the contents of the
Strupp Affidavit, but he mischaracterized Forrest's statements by
concluding that Forrest was "sure" Officer Van Dusen labeled
petitioner's sample before leaving the visiting room.  Respondent's
Exhibit 1, Att. 6, p. 5.  In reality, Forrest was "unsure whether
he observed Officer Van Dusen put the identifying label stickers on
the sample container.  He said, 'I'm sure he put the stickers **on my
bottle**.  I didn't see him put the stickers on it.  I'm thinking he

probably did.'"    Respondent's Exhibit 1, Att. 2, p. 10, ¶ 15 (emphasis added).  Strupp's Affidavit reiterates that "[a]gain, Mr. Forrest said he's not sure if the bottles had stickers on them" when he was escorted from the visiting room.  *Id* at 11, ¶ 18.

There is also no dispute that Officer Van Dusen left the urine samples unattended for a period of time, breaking the chain of custody.  This is particularly significant in a case where the results of the urinalysis suggest that petitioner is not guilty of the charged offense.

The court also finds it disturbing that the DHO considered petitioner's disciplinary record when deciding whether to find him guilty of using narcotics.   In his Declaration supporting his decision, the DHO states: "I am familiar with inmate Willmes. During his entire custody with the BOP, he has had difficulty adjusting to the correctional setting and had been found to have committed numerous violations of BOP Prohibited Acts.  He has a lengthy disciplinary history. . . ." Respondent's Exhibit 1, ¶ 6. The DHO then proceeds to list each of petitioner's previous 36 institutional offenses dating back to January 19, 1991.  These prior offenses are irrelevant with respect to whether petitioner was guilty of using narcotics on the occasion at issue.  While the DHO should not have considered these prior convictions in reaching his decision, the fact that he spends four pages of his Declaration

describing them and editorializing on petitioner's "difficulty adjusting to the correctional setting" suggests otherwise.

Ultimately, the court is left with a situation where there was some evidence that petitioner used narcotics, as well as overwhelming evidence of innocence. This may satisfy substantive due process, but a procedural due process problem remains. Forrest was found to have a clean urine sample despite his long-term regular use of an opiate-based painkiller. Where only two inmates gave urine samples, and only one sample was tainted with opiates, that sample must have belonged to Forrest. The DHO "considered" this information from the Strupp Affidavit only when required to do so, and simply concluded that he could not explain it. This superficial review of the Strupp Affidavit is tantamount to no consideration at all. "A prison disciplinary body may not arbitrarily refuse to consider exculpatory evidence offered by a prisoner simply because the record already contains the minimal evidence suggesting guilt required by *Hill*." *Viens v. Daniels*, 871 F.2d 1328, 1336 n. 2 (7th Cir. 1989).

Given the DHO's failure to meaningfully consider the urinalysis results, and further given the rest of the record which gives the appearance that petitioner was repeatedly targeted for punishment no matter the evidence, the court finds that petitioner's conviction for using narcotics violates his right to

15 - OPINION AND ORDER

due process of law.  As a result, the Petition for Writ of Habeas
Corpus is granted.

**<u>ORDER</u>**

The Petition for Writ of Habeas Corpus (docket #1) is GRANTED.
Respondent shall immediately RESTORE petitioner's good time credit,
RESTORE petitioner's institutional privileges, and EXPUNGE the
conviction stemming from the October 29, 2006 urinalysis from
petitioner's record.

DATED this 6th day of August, 2009.

s/   Janice M. Stewart
                    Janice M. Stewart
                    United States Magistrate Judge

16 - OPINION AND ORDER